Request of Governor and Council,
No. 5857.

## OPINION OF THE JUSTICES.

Submitted October 2, 1968.
Answer returned October 16, 1968.

The Governor and Council on September 30, 1968 adopted the resolution appended hereto which was filed in this court on the same date.

The following answer was returned:

*To His Excellency the Governor and the Honorable Council:*

The undersigned Justices of the Supreme Court respectfully give the following answer to the inquiry contained in your resolution of September 30, 1968.

The inquiry asks whether a guaranty by the State of payment of 50% of a $650,000 loan secured by a first mortgage on the real estate of Mt. Attitash Lift Corporation may be given pursuant to the authority of RSA 162-A:14-a (supp) when a portion of the proceeds from the loan will be used for the following purposes:

1. For the repayment of existing loans, both secured and unsecured, both long term and short term;

2. For the payment of current accounts and operating expenses;

3. For the payment of the Industrial Development Authority Guaranty Charge to the amount of $3,250;

4. For debt service to December 31, 1968 on other notes of the mortgagor in the amount of $6,955;

5. For the creation of an operating capital reserve of $45,745;

6. For the reimbursement of the mortgagor for feasibility studies and for the expense of construction work heretofore performed by the mortgagor on the project; and

7. Interest expenses on the proposed loan during the period of construction.

RSA 162-A: 14-a ( supp ) provides that "*for the proper implementation of the declared purposes of this act,* the governor, with the advice and consent of the council, is authorized in the name of the state to guarantee payment of a portion of first mortgages on industrial real property within the limitations hereinafter prescribed . . . . " [Emphasis supplied] Industry is defined to include recreational facilities in RSA 162-A:2 ( supp ).

RSA 162-A:1 in declaring the need and purpose of the act states in part: " It is declared that there is a statewide need for the development of additional industry, recreational facilities and areas suitable for such development for the preservation and betterment of the economy of the state and its inhabitants. It is the purpose of this chapter to provide for the establishment and redevelopment of such areas together with adequate transportation, water, sewage and other necessary facilities so as to provide and encourage orderly industrial and recreational development in the best interests of the state . . . . "

Before the act was amended to provide for redevelopment, its purpose was stated as follows: " The direct object of this [act] is to encourage new industrial development in this state by providing suitable areas, buildings and facilities on such terms as will prove attractive to persons wishing to engage in private enterprise. " *Opinion of the Justices,* 99 N. H. 528, 530-531. See also, *Opinion of the Justices,* 103 N. H. 258, 259.

*Opinion of the Justices,* 103 N. H. 258 related to the constitutionality of a bill which added section 14-a ( supp ) to the existing act. In advising that with certain amendments the proposed act would be constitutional, the Justices said ( *Ib.,* 260 ) that their conclusion presupposed that a guaranty would " necessarily relate to a mortgage on industrial real property of the character described by the existing law, in a project qualified

under RSA 162-A:8 ( supp ) . . . . Such approval of the project, . . . would in our opinion adequately assure that a guaranty so approved 'bears directly and immediately . . . upon the public welfare,' and is not 'merely incidental and subsidiary to assistance rendered to private industry.'" See also, *Opinion of the Justices,* 106 N. H. 237, 240.

That a guaranty under section 14-a ( supp ) is related to a "project," is shown by the fact that section 14-b ( supp ) which requires approval of the Governor and Council for any guaranty under sections 14-a or 14-aa is entitled "Approval of Projects for Guaranty." The word *project* "shall be deemed to include all property, rights, easements, and franchises relating thereto and deemed necessary or convenient for its operation, and shall embrace all means of accomplishing the purposes set forth in section 1." *S.*2( 3 ).

*Cost of project* is defined to "embrace the cost of construction, the cost of all lands, property, rights, easements, and franchises acquired, which are deemed necessary for such construction, the cost of all machinery and equipment, financing charges, interest prior to and during construction, cost of engineering and legal expense, plans, specifications, surveys, estimates of costs, and other expenses necessary or incident to determining the feasibility or practicability of any project together with such other expenses as may be necessary or incident to the financing herein authorized and the construction of the project and the placing of the same in operation." *S.*2( 4 ).

The declared purpose of the act is "to provide for the establishment and redevelopment of . . . areas" suitable for "development of additional industry [and] recreational facilities." It does not provide for the operation of such industry or recreational facilities. The definition of "cost of project" while authorizing the expense of "placing of the same in operation" falls short of authorizing the subsidization of industry or recreational facilities. It should be noted however that payment of interest is specifically authorized "prior to and during construction." *S.*2( 4 ). This section also authorizes the payment of "other expenses as may be necessary or incident to the financing herein authorized and the construction of the project and the placing of the same in operation." We consider these provisions would authorize the use of the proceeds of the loan for the purpose of paying the State's guaranty charge, and also the debt service

on other notes of the mortgagor to December 31, 1968.

Nowhere in the act is there any express authorization to guarantee mortgages for the purpose of paying operating expenses and we think none can be inferred. It follows therefore that a guaranty is not authorized as to that part of the proceeds of the proposed loan that will be used for the purpose of paying current accounts and operating expenses and for the creation of an operating capital reserve.

It is our opinion that the proceeds of a loan guaranteed under section 14-a ( supp ) can be used to pay off existing secured and unsecured loans. This is implied in the authority granted in section 14-a ( supp ) to guarantee loans which will implement the declared purpose of " redevelopment " of existing areas.

Since the cost of feasibility studies and interest on the proposed loan before and during the period of construction are both included in the definition of " cost of project, " that part of the mortgage loan the proceeds of which are to be expended for those purposes may be guaranteed.

Therefore our specific answer to your seven-part question is that so much of a loan the proceeds of which will be used for the purposes specified in parts 1, 3, 4, 6 and 7 of the question may be guaranteed up to 50% but that part of a loan the proceeds of which will be used for the purposes specified in parts 2 and 5 may not be guaranteed.

GRIFFITH, J., not having heard oral arguments asks to be excused from expressing his views.

FRANK R. KENISON.
LAURENCE I. DUNCAN.
EDWARD J. LAMPRON.
WILLIAM A. GRIMES.

October 16, 1968.

*George S. Pappagianis,* Attorney General, and *William F. Cann,* Deputy Attorney General, for negative answers;

*McLane, Carleton, Graf, Greene & Brown,* and *Jack B. Middleton,* for Mt. Attitash Lift Corporation, for affirmative answers.

## APPENDIX

WHEREAS, the National Shawmut Bank of Boston has applied to the Industrial Development Authority for a guarantee of 50% of a loan of $650,000. to Mt. Attitash Lift Corporation of Bartlett, New Hampshire, which loan is to be secured by a first real estate mortgage; and

WHEREAS, the Industrial Development Authority, pursuant to RSA 162-A:14-a ( supp ), voted unanimously to recommend to the Governor and Council that the Governor in the name of the State of New Hampshire guarantee payment of 50% of such first mortgage, subject to the approval of the Attorney General; and

WHEREAS, the proceeds from such loan will be used to retire certain existing loans, both secured and unsecured, long term and short term, from Mt. Attitash Lift Corporation to other banking institutions, in the aggregate amount of $221,500; the payment of certain current accounts and operating expenses until December 31, 1968 in the amount of $23,500; the cost of new construction and financing costs in the amount of $350,000; the Industrial Development Authority Loan Guaranty Charge in the amount of $3,250; debt service on certain notes of Mt. Attitash Lift Corporation until December 31, 1968 in the amount of $6,955; and an operating capital reserve of $45,745. for the future payment of current accounts and debt service; all as more particularly detailed in " Proposal For A Loan Application" prepared by American Resort Consultants, Inc., July 1, 1968 ( Second Revision July, 1968 ) a copy of which is submitted herewith; and

WHEREAS, Mt. Attitash Lift Corporation has heretofore expended $39,564. for feasibility studies and construction on the project, and will incur interest expense on the proposed loan during construction, none of which expenses is included in the proposed loan of $650,000; and

WHEREAS, the Attorney General has advised the Governor and Council that, in his opinion, there is a question whether the Governor and Council may, pursuant to the provisions of RSA 162-A:14-a ( supp ) guarantee the proposed first mortgage to the extent that the proceeds are used for certain purposes, particularly, working capital purposes; and

WHEREAS, the Attorney General has recommended referral of

the question of the authority of the Governor, with the advice and consent of the Council, to guarantee the proposed first mortgage pursuant to RSA 162-A;

Now, THEREFORE, IT IS

RESOLVED, by the Governor and Executive Council that the Justices of the Supreme Court, pursuant to Part II, Article 74 of the New Hampshire Constitution, render their opinion upon the following important questions of law:

May the Governor, with the advice and consent of the Council, pursuant to the authority of RSA 162-A, guarantee a loan secured by a first mortgage when a portion of the proceeds will be used:

1. For the repayment of existing loans, both secured and unsecured, both long term and short term;

2. For the payment of current accounts and operating expenses;

3. For the payment of the Industrial Development Authority Guaranty Charge;

4. For debt service to December 31, 1968 on other notes of the mortgagor;

5. For the creation of an operating capital reserve;

6. For the reimbursement of the mortgagor for feasibility studies and for the expense of construction work heretofore performed by the mortgagor on the project; and

7. Interest expenses on the proposed loan during the period of construction?